# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN S. FRAZIER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HUMANA WISCONSIN HEALTH )<br>ORGANIZATION INSURANCE )<br>CORP. d/b/a HUMANA GOLD PLUS )<br>(HMO) and ALAN SALINAS, )<br>)<br>Defendants. ) | Case No. CIV-19-01121-PRW |

## **ORDER**

On January 2, 2020, Plaintiff filed a Motion to Remand (Dkt. 6) pursuant to 28 U.S.C. § 1447(c). For the reasons outlined below, the Court **GRANTS** the Motion to Remand (Dkt. 6) and remands the case.

## *Background*

Plaintiff sued Defendants Humana Wisconsin Health Organization Insurance Corporation and Alan Salinas in state court for "false representations, concealment and deceit" under state law.[1] Plaintiff alleges that Mr. Salinas tried to sell her a Humana Medicare Advantage plan and, after failing to do so, asked Plaintiff "to sign a form in order to verify that he had met with her for a sales presentation" so that his employer could "verify the number of sales he was attempting each week."[2] About eight months later,

---

[1] Pl.'s Pet. (Dkt. 1-1) ¶¶ 14–15, at 4–5.

[2] *Id.* ¶ 6, at 2.

Plaintiff learned that her previous Medicare supplemental insurance had been replaced with Humana Medicare Advantage (MA) plan.[3] Plaintiff thus alleges that Defendants replaced her insurance coverage without her consent.[4] Plaintiff alleges this caused her "physical injury, pain and discomfort, emotional distress, anxiety, embarrassment and delays, improper interference with her proper medical care, the lost premiums paid in 2018 for her Medicare supplement policy and other consequential damages."[5] Plaintiff does *not* seek recovery of "any retroactive payment of benefits" under the Humana MA plan, as she asserts that "there are no unpaid benefits involved in these damages that resulted from the Defendant's [sic] false representations, concealment and deceit."[6] In keeping with section 2008(A)(2) of the Oklahoma Pleading Code,[7] Plaintiff prays for "damages, both compensatory damages and punitive damages," in an amount that "is in excess of the amount required for diversity jurisdiction pursuant to § 1332 of Title 28 of the United States Code.[8]

---

[3] *Id.* ¶ 7, at 3.

[4] *Id.*

[5] *Id.* ¶ 15, at 5.

[6] *Id.* ¶16, at 5.

[7] *See* Okla. Stat. tit. 12, § 2008(A)(2) (Supp. 2019) ("Every pleading demanding relief for damages in money in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, except in actions sounding in contract.").

[8] Pl.'s Pet. (Dkt. 1-1) at 5.

Defendants removed the case to federal court, asserting that "[t]his Court has federal question jurisdiction over the matter pursuant to 28 U.S.C § 1331" and that "Plaintiff's claims are preempted by 42 U.S.C. § 1395w-26(b)(3), which states in part, '[t]he standards established under this part shall supersede any State law or regulation . . . with respect to MA plans which are offered by MA organizations under this part.'"[9]

Plaintiff has now filed a Motion to Remand (Dkt. 6). Defendants responded (Dkt. 8), and Plaintiff replied (Dkt. 12).

## *Governing Law*

A federal district court must remand any removed case over which it lacks subject matter jurisdiction.[10] The burden rests on the removing party invoking the court's jurisdiction to demonstrate that the action was properly removed.[11] Because federal courts are "limited tribunals," there is a presumption against jurisdiction over removed cases.[12]

Under 28 U.S.C. § 1331, federal district court have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[13] "For a case to arise under federal law within the meaning of § 1331, the plaintiff's 'well-pleaded complaint' must establish one of two things: 'either that federal law creates the

---

[9] Defs.' Notice of Removal (Dkt. 1) ¶ 3, at 2 (alteration and ellipses in original).

[10] 28 U.S.C. § 1447(c) (2012).

[11] *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citing *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)); *Town of Freedom v. Muskogee Bridge Co.*, 466 F. Supp. 75, 77 (W.D. Okla. 1978).

[12] *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 814 (10th Cir. 2020) (quoting *Pritchett v. Off. Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005)).

[13] 28 U.S.C. § 1331 (2012).

3

cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[14] The Tenth Circuit has described this "well-pleaded complaint rule" as follows:

> The well-pleaded complaint rule makes the plaintiff the "master" of his claim. The plaintiff can elect the judicial forum—state or federal—based on how he drafts his complaint. Although he "may not circumvent federal jurisdiction by omitted federal issues that are essential to his . . . claim," he can nevertheless "avoid federal jurisdiction by exclusive reliance on state law." "Neither the plaintiff's anticipation of a federal defense nor the defendant's assertion of a federal defense is sufficient to make the case arise under federal law."[15]

"The doctrine of 'complete preemption,' however, is 'a corollary or an exception to the well pleaded complaint rule,' under which 'a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character.'"[16] The complete preemption exception is rare, however, as "only a few federal statutes [] so pervasively regulate their respective areas that they have complete preemptive force."[17]

---

[14] *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting *Nicodemus ex rel. Warren D. Nicodemus Living Trust dated Aug. 5, 1999 v. Union Pac. Corp.* (*Nicodemus II*), 440 F.3d 1227, 1232 (10th Cir. 2006)).

[15] *Id.* (citations omitted) (quoting *Nicodemus II*, 440 F.3d at 1232; *Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006)).

[16] *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (quoting *Turgeau*, 446 F.3d at 1061).

[17] *Id.* (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011)).

*Analysis*

Plaintiff Motion (Dkt. 6) argues that the well-pleaded complaint rule mandates remand because her Petition (Dkt. 1-1) does not raise a substantial federal issue but only includes claims—fraud, deceit, nondisclosure, and concealment—derived from Oklahoma law.[18] Along these lines, she argues that she derives neither her standing nor the substantive basis for her claims from the Medicare Act, nor are her claims inextricably intertwined with a claim for Medicare or MA benefits.[19] Plaintiff also argues that, "even if [her] claims had 'arisen under' the Medicare Act, . . . the Court would still lack jurisdiction" because the Secretary of Health and Human Services has sole jurisdiction over such claims.[20] Lastly, Plaintiff argues that 42 U.S.C. § 1395W-26(b)(3) does not completely preempt her state law claims,[21] and in any event, complete preemption is an affirmative defense that cannot serve as the basis for federal question jurisdiction.[22]

Defendants Response (Dkt. 8) counters that, while Plaintiff has "couched" her allegations in terms of state-law causes of action, the claims are actually federal claims arising under the Medicare Act.[23] Defendants argue that Plaintiff is really "attack[ing] the sufficiency of the marketing materials and in-person presentation—which were created and

---

[18] *See* Pl.'s Mot. to Remand (Dkt. 6) at 7–8, 17–20. For citing purposes, the Court references the ECF page numbers appearing at the top of the document, rather than the page numbers appearing at the bottom.

[19] *Id.* at 17.

[20] *Id.* at 20–21.

[21] *Id.* at 7, 22.

[22] *Id.* at 22 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

[23] Defs.' Resp. to Pl.'s Mot. to Remand (Dkt. 8) at 2.

approved pursuant to federal law and statute"[24]—which therefore "implicates disputed and substantial federal questions" arising under the Medicare Act.[25] Defendants point out that the Medicare Modernization Act ("MMA of 2003") directs the Centers for Medicare and Medicaid Services (CMS) to regulate marketing material and that CMS has "created a detailed framework for approval of advertisements and other marketing material."[26] Thus, Defendants contend that states do not have the authority to regulate marketing of Medicare plans and that a challenge to those materials must arise under federal law.[27] Although the term "preemption" is occasionally found throughout Defendants' Response (Dkt. 8),[28] Defendants do not seem to rely on complete preemption as a basis for federal question jurisdiction.[29]

---

[24] *Id.* at 7; *see also id.* at 2 ("Plaintiff alleges the sales presentation was deficient because neither Humana nor Salinas: (1) told Plaintiff was a Medicare Advantage Plan was or how it would replace Medicare; (2) told Plaintiff he was taking action to disrupt her Medicare coverage; (3) gave her advice on how to preserve her Medicare coverage; (4) disclosed anything that was happening; and, (5) disclosed how the supplemental plan would work. Plaintiff alleges Defendants knew their marketing materials and strategies were misleading." (citing Pl.'s Pet. (Dkt. 1-1) ¶¶ 6, 8, at 2–4)).

[25] *Id.* at 1.

[26] *Id.* at 5 (citing 42 U.S.C. § 1395w-101(b)(1)(B)(vi); 42 C.F.R. § 423.50).

[27] *See id.* at 5–6.

[28] *See, e.g.*, *id.* at 2 ("When determining whether federal law preempts state law, a plaintiff's characterization of a claim is not conclusive."); *id.* at 5 ("Federal law and regulations completely displace any state laws regarding the marketing or promotion of Humana's plan." (citing *Clay v. Permanente Med. Grp., Inc.*, 540 F. Supp. 2d 1101, 1108–10 (N.D. Cal. 2007); 73 Fed. Reg. 28556, 28582 (May 16, 2008)).

[29] *See id.* at 3–4 ("Contrary to Plaintiff's statement, 'complete preemption' is not the only basis for federal jurisdiction. . . . Simply, a state law claim may 'arise under' the Medicare Act, regardless of whether there is complete preemption . . . .").

In her Reply (Dkt. 12), Plaintiff claims that she is not challenging Mr. Salinas's presentation, nor Humana's marketing materials, but rather a "lie told by Mr. Salinas" that induced her signature for enrollment without her consent.[30] Plaintiff argues, "Nothing indicates that Mr. Salinas' oral misrepresentation was made in conjunction with CMS-approved materials such as 'marketing materials.'"[31] Plaintiff even characterizes Mr. Salinas's misrepresentation as an "ad hoc" communication that is specifically excluded from the definition of "marketing materials" that appears in 42 C.F.R. § 422.2260.[32]

Based on the briefing, the sole issue before the Court is whether Plaintiff's Petition (Dkt. 1-1) asserts a claim arising under federal law—specifically, the Medicare Act. Upon consideration of the facts and the parties' arguments, the Court finds that Defendants have failed to carry their burden in establishing federal question jurisdiction and that this case should be remanded.

First, the face of Plaintiff's Petition (Dkt. 1-1) makes no mention of a federal cause of action, nor does it explicitly ask the court to resolve any federal law issue. It also disclaims recovery of any benefits that would require the Court to interpret either Medicare coverage or the MA plan.

---

[30] Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. to Remand (Dkt. 12) at 1.

[31] *Id.* at 7–8.

[32] *Id.* at 7 ("Marketing materials exclude ad hoc enrollee communications materials, meaning informational materials that— . . . (iii) Do not include information about the plan's benefit structure." (quoting 42 C.F.R. § 422.2260(6))).

Second, Plaintiff's right to relief does not necessarily depend upon resolution of a substantial question of federal law. Although an allegation that CMS-regulated marketing materials are misleading might involve a substantial question of federal law, this case does not involve a consenting enrollee who, after enrollment, has challenged the marketing materials. This case is thus distinguishable from cases like *Clay v. Permanent Medical Group, Inc.*, 540 F. Supp. 2d 1101 (N.D. Cal. 2007), and *Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), which involved consenting enrollees directly challenging the marketing materials.[33] Here, Plaintiff is challenging the allegedly tortious actions that led to a purportedly fraudulent enrollment. Furthermore, resolution of this dispute does not depend on the law and regulations derived from the Medicare Act. In *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222 (D.N.M. 2018), the district judge granted summary judgment and held that § 1395w-26(b)(3) did preempt state claims for wrongful and tortious denial of benefits and wrongful death because, in order to resolve

---

[33] The plaintiffs in the *Uhm* case challenged the marketing materials as fraudulent after enrolling in a Humana Medicare Part D plan. *Uhm*, 620 F.3d at 1139. The Ninth Circuit held that fraud and inducement-by-fraud claims were preempted, because if the state court were to determine that the materials were misrepresentations, then they would be "directly undermin[ing] CMS's prior determination that those materials were not misleading." *Id*. at 1157. The Ninth Circuit went on to explain that "there are other tort or State contract law, or consumer protection-based claims that would be entirely independent of the issue of whether services are required under M+C provisions." *Id*. at 1155 (quoting 65 Fed. Reg. 40170, 40261 (June 29, 2000)).

The plaintiffs in the Clay case were challenging the adequacy under state law of the marketing material's disclosures about an arbitration agreement after their decedent had enrolled in a MA plan with Kaiser. *Clay*, 540 F. Supp. 2d at 1104, 1108. The district court held that the Medicare Act preempted state law governing disclosures about arbitration, found that all plaintiffs were bound by the arbitration provisions in the MA plan, and granted the defendants' motion to compel arbitration.

the denial-of-coverage dispute, the court would be required to evaluate the laws and regulations of the Medicare Act.[34] That comes as no surprise, given that a challenge to the timeliness, procedures, and administration of coverage hinges on the authority derived from the Medicare Act.[35] No such challenge exists in this case. Plaintiff does not assert claims over coverage, denial of coverage, benefits, or procedures. Plaintiff instead asserts that state law torts were committed when she was fraudulently enrolled into Defendants' MA plan without her consent.

Defendants have accordingly failed to meet their burden of showing that subject matter jurisdiction exists.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Dkt. 6) is **GRANTED.** Accordingly, the Court **REMANDS** this case to the District Court of Oklahoma County, State of Oklahoma.

**IT IS SO ORDERED thia 7th day of January, 2021.**

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[34] 292 F. Supp. 3d at 1223, 1231 (D.N.M. 2018) (plaintiffs were enrollees challenging coverage).

[35] *Alston v. United Healthcare Servs., Inc.*, 291 F. Supp. 3d 1170 (D. Mont. 2018) (holding that the state law claims do not survive preemption because the Medicare Act governs the denial of coverage); *N.Y. City Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 769 F. Supp. 2d 250 (S.D.N.Y. 2011) (denying remand because the "case implicates the complex reimbursement schemes created by Medicare law," and will "affect the hundreds of MA Organizations that have contracted with CMS").